**Michael E. Haglund**, OSB No. 772030
Email: mhaglund@hk-law.com
**Matthew E. Malmsheimer**, OSB No. 033847
Email: mmalmsheimer@hk-law.com
**HAGLUND KELLEY LLP**
2177 SW Broadway
Portland, OR  97201
Phone:  (503) 225-0777
Facsimile:  (503) 225-1257

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT DISTRICT OF OREGON
### (Eugene Division)

| | |
|---|---|
| **ESTATE OF EDWIN A. YODER**, **REBECCA ANN YODER COLBY**, as an individual and in her capacities as **Personal Representative of the ESTATE OF EDWIN A. YODER** and **Trustee of THE EDWIN A. YODER FAMILY TRUST**, **ALLEN YODER**, an individual, **SARAH JANE MILLER**, an individual, **JONATHAN A. MILLER**, an individual, **ZANE A. MILLER**, an individual,<br><br>      Plaintiffs,<br><br>    v.<br><br>**PRO FORESTRY CONSULTING LLC**, an Oregon limited liability company, **CRAIG RICHARDS**, an individual, **PATRICIA RICHARDS**, an individual, **ROBERT SCHAFFER**, an individual, **T & K FOGLIO INC.**, an Oregon corporation, **FOUR MILE LOGGING, INC.**, an Oregon corporation, **GRANT CREEK LOGGING, INC.**, an Oregon corporation, **CONSTRUCTION - BUILDING - ROADS, LLC**, an Oregon limited liability company, **TNT CONSTRUCTION & EXCAVATION LLC**, an Oregon limited liability company, and **NORTHWEST HARDWOODS, INC.**, a Delaware corporation,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**Elder Abuse; Timber Trespass; Negligence; Fraud; and Nuisance Claims** |

Page 1 – COMPLAINT

## I.    <u>INTRODUCTION</u>

1.    This case is a tragic illustration of why Oregon needs to establish a board to license and regulate professional foresters. Unlike lawyers, doctors, nurses and accountants, who can be disciplined or lose their licenses for intentional misconduct, unethical behavior or multiple instances of malpractice, unscrupulous individuals calling themselves professional foresters can prey on vulnerable Oregon woodland owners for years without consequence.

2.    Over a period of approximately two and one-half years, defendant Professional Forestry Consulting LLC ("Pro Forestry") and its unscrupulous owners, husband and wife defendants Craig Richards and Patricia Richards, used false representations to convince a 98 year-old New Jersey man being cared for by his 65 year-old daughter to sign a contract that purported to grant Pro Forestry blanket authority to conduct timber harvests on the family's 321.26 acres of forestland just north of Bandon, Oregon.

3.    In fact, while 98 year-old Edwin A. Yoder was the two-thirds undivided owner of the forestland near Bandon, he lacked the capacity to read or understand the contract, a fact that will be confirmed at trial by his daughter and his long-time family physician in New Jersey. In addition, the Pro Forestry contract prepared by the Richards was so vague as to be clearly unenforceable under Oregon legal precedent. The contract contained no reference to or description of the forestland to which it applied or to the nature of the timber harvest operations that might be conducted, making absolutely no mention of the acreage to be harvested, the logging methods to be used, the projected harvest volume or any specified time frame for performance. In addition, the Pro Forestry contract did not include the required consent of the other undivided one-third owner, plaintiff Sarah Jane Miller, making the contract completely invalid on this basis as well.

Page 2 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

4.      In this circumstance, where a serial fraudster baits an elderly person into signing a blank check contract with no specifics, Oregon Supreme Court precedent is crystal clear that the contract is unenforceable and void from the time it was signed. The contract with Pro Forestry that Edwin Yoder signed in December 2022 is analogous to the situation where an unscrupulous construction contractor convinces an elderly homeowner to sign a contract to remodel their home with no plans, no specifics regarding the rooms to be remodeled and a price to be determined later at the contractor's discretion. In both of these situations, the contracts are void from the outset and the subsequent fleecing of the elderly victim's money and assets constitutes financial elder abuse in blatant violation of Oregon law.

5.      A 45-day intensive investigation preceding the filing of this Complaint reveals that defendant Craig Richards, who represents himself as a professional forester who founded his company to protect woodland owners from "ripoff artists" is in fact a serial ripoff artist who has been preying on unknowing woodland owners in Coos and Curry Counties for over a decade. Many of those victims have been vulnerable elderly individuals, which Oregon statute defines as "a person 65 years of age or older." ORS 124.100 (1) (a).

6.      Throughout the years 2023 and 2024 and continuing into early 2025, defendants Pro Forestry, Craig Richards and Patricia Richards, aided and abetted by the four logging contractors and two road construction companies named as defendants in this case, decimated the Yoder family's 321.26 acres of forestland. The aerial photograph below shows that all of this woodland (the western half of section 16) was timbered in 2022 prior to a series of clearcut harvests planned by Pro Forestry and executed by the logging contractor and road construction company defendants in this case.

///

Page 3 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201



7.      As of early March 2025, the Yoder family's 321.26 acres are a scene of nearly complete devastation. The aerial photograph below shows that over 260 of the 321.6 acres have been clearcut in blatant violation of the Oregon Forest Practices Act, which prohibits clearcuts of greater than 120 acres. With the exception of two small patches of young nonmerchantable trees and some trees on either side of two creeks including the salmon-bearing Twomile Creek, all of the merchantable timber on the property has been removed.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201



8.      The financial results of the massive timber harvest and associated roadbuilding

planned by Pro Forestry and implemented by the four logging contractor defendants and two

roadbuilding defendants are shocking. Based upon plaintiffs' factual investigation, which was

hindered by Pro Forestry's failure to provide plaintiffs with any log sales information for almost

all of 2024, Pro Forestry sold approximately two million board feet of logs harvested from the

Yoder family property and received approximately $1.7 million in total revenues. Of this total,

plaintiffs have received absolutely nothing.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

9.      The Yoder family property near Bandon, Oregon includes three parcels: two 160-acre parcels zoned forest conservation and an adjacent 1.26-acre parcel zoned residential. In December 2022, just before Pro Forestry and the logging contractor and roadbuilding defendants began what became a more than two-year process of denuding almost all of the Yoder family property, these three parcels had a value of approximately $2.5 million. As of the filing of this Complaint, the Yoder family property has been reduced to a bare land value of $900 per acre, for a total post-harvest value of approximately $290,000, a reduction of $2.2 million. In addition, plaintiffs must perform invasive weed treatments, reforestation and road rehabilitation at a cost of approximately $350,000 and will incur an additional $500,000 over 20 years to treat the highly invasive and flammable gorse that defendants' caused to flourish on the property. Plaintiffs also lost three years' worth of tree growth due to defendants' untimely failure to promptly reforest clearcuts, imposing a loss of $750,000 on plaintiffs, and suffered a further loss of $1.0 million due to the fact that most of the timber harvested on the Yoder family land should have been allowed to grow another 15 to 20 years to maturity.  Defendants also inflicted $500,000 in pain and suffering on Rebecca Ann Yoder Colby, an elderly person who was repeatedly manipulated and intimidated to the point of tears by Craig Richards and Patricia Richards and has lived for nearly two years in fear of losing her house to the creditors that Craig Richards has repeatedly claimed are unpaid and will chase both his company and the Yoder family.  Plaintiffs' total damages are $5.3 million.

10.      As alleged below, plaintiffs allege claims for Elder Abuse, Timber Trespass, Negligence, Fraud and Nuisance. Because this Complaint includes an elder abuse claim, ORS 124.100 (6) requires that a copy be provided to the Oregon Attorney General, which is being accomplished by mail on the date of filing.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

## II.    JURISDICTION AND VENUE

11.    This Court has original jurisdiction of this action under 28 U.S.C. §1332 because the matter in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Specifically, plaintiffs are citizens and residents of New Jersey, Georgia, Virginia and Washington and the first nine named defendants are citizens of Oregon and the tenth named defendant, Northwest Hardwoods, Inc., is a Delaware corporation that maintains its principal place of business in Frisco, Texas and therefore is a resident of that state.

12.    This Court has personal jurisdiction over defendants because every defendant has and continues to do business in the State of Oregon, has sufficient contacts within the state and in this judicial district, has purposely availed itself within this district and has directed tortious conduct at Oregon causing injury in this state.

13.    Venue is proper in this district under 28 U.S.C. § 1391 because (1) all defendants are  subject to personal jurisdiction in this district at the time the action is commenced; (2) a substantial share of the events and omissions giving rise to the claims occurred in this district; (3) a substantial amount of the tortious conduct at issue related to property located in this district; and (4) all defendants transact business within this district and have engaged in business activities within this district.

## III.    PLAINTIFFS

14.    Prior to his death on May 8, 2023, Edwin A. Yoder, a long-time resident of New Jersey, was an undivided two-thirds owner of the Yoder family property in Bandon, Oregon. Upon his passing, the assets owned by his estate in New Jersey were the subject of a probate proceeding in that state and the Yoder family property in Oregon was the subject of a probate proceeding in Coos County Circuit Court that ultimately resulted in the filing of deeds

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

distributing his two-thirds interest in the Yoder family property on July 24, 2024 to the Edwin A. Yoder Trust. At all material times between May 23, 2023 and July 24, 2024, the Estate of Edwin A. Yoder, the first named plaintiff in this case, was a two-thirds owner of the Yoder family property in Oregon. Neither the Estate of Edwin A. Yoder nor one-third owner plaintiff Sarah Jane Miller ever entered into any valid written contract with any of the Pro Forestry, logging contractor or road construction defendants in this case.

15.    Plaintiff Rebecca Ann Yoder Colby is the daughter of Edwin A. Yoder, who moved with her husband into her father's home in New Jersey following the death of her mother in 2010. She cared for her father between then and his death in May 2023 and handled all of his affairs during the last several years of his life after he became incompetent to do so himself. Rebecca Yoder Colby is a plaintiff in this case in her individual capacity as an elderly person dealing with the Pro Forestry Defendants, as personal representative of the Estate of Edwin A. Yoder and as trustee of The Edwin A. Yoder Family Trust.  Rebecca Yoder Colby and her brother Allen Yoder are the two beneficiaries of The Edwin A. Yoder Family Trust with equal shares in the assets of that trust.

16.    Plaintiff Sarah Jane Miller is a daughter of decedent Edwin A. Yoder, who received a one-third undivided interest in the Yoder family property in Oregon by deed in 2007. Plaintiff Sarah Jane Miller subsequently conveyed a deed naming herself and two sons, Jonathan A. Miller and Zane. A. Miller, as undivided co-owners of a one-third interest in the Yoder family property in Oregon.

///

///

///

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

## IV.    **DEFENDANTS**

### Pro Forestry Defendants

17.    Defendant Pro Forestry Consulting LLC is an Oregon LLC owned and operated by defendants Craig Richards and his wife Patricia Richards. Pro Forestry is engaged in the business of forestry consulting to woodland owners in western Oregon.

18.    Pro Forestry Consulting LLC, Craig Richards and Patricia Richards are referred to collectively as the "Pro Forestry Defendants."

### Logging Contractor Defendants

19.    Defendant Robert Schaffer is an individual who lives in Myrtle Point, Oregon engaged in business as a logging contractor. Defendant Schaffer does business under the name of RTL Logging LLC, an Oregon LLC that was administratively dissolved on May 3, 2018. This defendant performed substantial logging on the Yoder family property during 2024 and early 2025.

20.    Defendant T & K Foglio Inc. is an Oregon corporation headquartered in Florence, Oregon engaged in business as a logging contractor. This defendant performed substantial logging on the Yoder family property during the period of 2023-2024.

21.    Defendant Four Mile Logging, Inc. is an Oregon corporation headquartered in Coquille, Oregon engaged in business as a logging contractor. This defendant performed substantial logging on the Yoder family property during the period of 2023-2024.

22.    Defendant Grant Creek Logging, Inc. is an Oregon corporation headquartered in Broadbent, Oregon engaged in business as a logging contractor. This defendant performed substantial logging on the Yoder family property during 2023.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

23.    The four above-named logging contractor defendants are referred to collectively as the "Logging Contractor Defendants."

## Road Construction Defendants

24.    Defendant TNT Construction & Excavation LLC is an Oregon limited liability company headquartered in Coquille, Oregon engaged in the business of road construction and excavation. This defendant performed substantial road construction work on the Yoder family property during the period of 2023-2024.

25.    Defendant Construction-Building-Roads, LLC is an Oregon limited liability company headquartered in Newport, Oregon engaged in the business of road construction and excavation. This defendant performed substantial road construction work on the Yoder family property during the period of 2023-2024.

26.    The two above-named road construction defendants are referred to collectively as the "Road Construction Defendants."

## Defendant Northwest Hardwoods, Inc.

27.    Defendant Northwest Hardwoods, Inc. is a Delaware corporation that owns and operates 30 hardwood sawmills across the United States including sawmills in Eugene and Garibaldi, Oregon. Defendant Craig Richards, in addition to operating defendant Pro Forestry with his wife, defendant Patricia Richards, has been employed by Northwest Hardwoods since early 2023 as the log procurement manager for its Eugene hardwood sawmill. As alleged in more detail below, defendant Craig Richards "sold" alder logs harvested from the Yoder family property to his employer pursuant to purchase orders that, upon information and belief, Craig Richards signed. Instead of being sold and delivered to an alder mill just 40 miles away, these logs were delivered to the Northwest Hardwoods sawmill in Eugene on log trucks taking over

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

three hours to travel the 140 miles between the Yoder family property and the Northwest Hardwoods sawmill in Eugene.

28.    The net result was to enrich Northwest Hardwoods with logs supplied from an area beyond a reasonable haul distance to defendant's sawmill and to impose a loss on the Yoder family plaintiffs because the log revenues generated by sales to Northwest Hardwoods were less than the costs incurred for logging, hauling and Pro Forestry's fees.

29.    When defendant Northwest Hardwoods hired Craig Richards as its log procurement manager for its Eugene hardwood sawmill in early 2023, this defendant knew or should have known that Mr. Richards had a poor reputation as a professional forester who was known to defraud the small woodland owners who engaged him. In fact, any reasonably thorough check of references and industry contacts would have revealed his reputation for poor forest management practices and the fleecing of small woodland owners.

30.    Defendant Northwest Hardwoods, despite knowing that Mr. Richards had been operating Pro Forestry, which is listed as a vender in defendant's log purchase accounting system, failed to require him to terminate that business. As a result, defendant Northwest Hardwoods allowed Mr. Richards to serve as its Eugene sawmill's log procurement manager with an ongoing conflict of interest. The Yoder family experience shows that Mr. Richards will favor his employer's interests over those of his woodland clients by selling their hardwood logs to Northwest Hardwoods at pricing levels that impose a loss on his client landowner.

31.    Upon information and belief, Northwest Hardwoods knew or should have known that the Pro Forestry Defendants were defrauding their client forest landowners by selling their hardwood logs at favorable prices to Northwest Hardwoods while incurring logging and haul costs that imposed losses on the forest landowners. Northwest Hardwoods enhanced Mr.

Page 11 – COMPLAINT

Richards' status by hiring him as its Eugene log procurement manager because logging

contractors like the Logging Contractor Defendants in this case would want to curry favor with

Mr. Richards in order to secure favorable hardwood sawlog pricing terms from Northwest

Hardwoods.

32.     Northwest Hardwoods claims on its website to have a reputation "for conducting

business honestly and with integrity" and that it maintains a code of ethics committing and the

company "to obey the law wherever it does business." Northwest Hardwoods' hiring of Craig

Richards as its Eugne mill log procurement manager clearly violated this defendant's code of

ethics.

## V.    <u>RELEVANT FACTUAL BACKGROUND</u>

### A.    <u>Elder Abuse.</u>

33.     Following the death of her mother in 2010, plaintiff Rebecca Ann Yoder Colby

and her husband moved in with her father Edwin A. Yoder in order to care for her father, who

was then 84 years old. At all material times during the last 13 years of his life (following the

death of his wife June Yoder), Edwin A. Yoder was an undivided two-thirds owner of the Yoder

family property near Bandon, Oregon. At all material times, plaintiff Sarah Jane Miller, the sister

of Edwin A. Yoder, was an undivided one-third owner of the Yoder family property. When

Edwin A. Yoder died on May 23, 2023, his estate became a two-thirds undivided owner of the

Yoder family property. Rebecca Ann Yoder Colby served as the personal representative of the

Edwin A. Yoder Estate in connection with the probate of the Estate's 321.26 acres of forestland

in Oregon until July 2024 when the final judgment in the probate proceeding authorized the

filing of deeds distributing the property as follows: two-thirds to the Edwin A. Yoder Trust with

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

Rebecca Ann Yoder Colby and her brother plaintiff Allen Yoder as the two equal beneficiaries of that trust.

34.    Following the death of Edwin A. Yoder, defendant Craig Richards periodically throughout the second half of 2023 and all of 2024 used high pressure tactics, threats and intimidation to secure the signature of Rebecca Ann Yoder Colby on a number of contracts with contract loggers and sawmills. Plaintiff Rebecca Ann Yoder Colby never signed any contract in a capacity as owner of the Yoder family property. During the pendency of the Oregon probate, she had authority to sign contracts as the personal representative of her father's estate, but was never asked to do so. At some point, defendant Craig Richards learned that Edwin A. Yoder had established a company in New Jersey called Yoder Real Estate Co. In furtherance of their elder abuse through fraudulent methods, the Pro Forestry Defendants began representing to the Logging Contractor and Road Construction Defendants and sawmills requiring the signing of purchase order for log purchases that the owner of the Yoder family property was Yoder Real Estate Co. Plaintiff Rebecca Ann Yoder Colby, again as a result of intimidating tactics and threats of creditor liens by the Pro Forestry Defendants, signed multiple contracts on behalf of Yoder Real Estate Co., which had absolutely no ownership interest in the Yoder family's Oregon property.

35.    The illegal defrauding of woodland clients by the Pro Forestry Defendants follows the pattern revealed by the facts of prior litigation filed by the undersigned counsel on behalf of a physician in Curry County, <u>Annamaria Anthony v. Pro Forestry Consulting LLC</u>, Curry County Civil No. 23CV10703. In the <u>Anthony</u> case, which was filed in March 2023 and concluded in late 2024, defendant Pro Forestry and an incompetent co-defendant logger and road builder paid $109,910 to settle professional malpractice and negligence claims related to timber

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

harvest and road widening on approximately 30 acres of Dr. Anthony's forestland in Langlois, Oregon. The Pro Forestry Defendants' have engaged in a pattern of deception and fraud in this case that is strikingly similar to the <u>Anthony</u> case but on more than 10 times the scale.

36.     When a timber harvest occurs on private land in Oregon, there is a standard system of accounting for timber harvested, logs delivered and logs sold to a manufacturer such as a sawmill or plywood plant. The log truck driver hauling logs from the harvest area to a mill is issued a multi-copy numbered log load ticket, one copy of which is supplied to the mill at the time of delivery. At the mill, the logs are offloaded and either scaled (measured in board feet) by an independent third party log scaling bureau or weighed at the mill with a receipt provided to the trucker with the log load number and weight in tons. Twice per month, each mill receiving logs from the harvest area generates a check for the log deliveries by species and grade, and forwards that check to the landowner or to the professional forester or logger who represents the landowner. For log deliveries during the first half of the month, the standard practice for the mill is to send out a check by the 25th of the month with all of the backup data showing loads, the scale or weight of the logs on each load, the agreed-upon pricing and the total paid per load. For logs delivered in the second half of the month, the sawmill sends the check by the 10th of the following month with all of same supporting documentation regarding the number of delivered loads, scale or weight and prices paid.

37.     To cheat the landowner and often contract loggers and roadbuilders, Pro Forestry uses the following five-step scheme. First, Pro Forestry convinces the landowner to sign a blank check unenforceable and illegal contract designating Pro Forestry as the owner's representative for all purposes in connection with the timber harvest. Second, Pro Forestry prepares its own form of contract for signing by the landowner and the contract loggers, each of which designates

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

Pro Forestry as the landowner's representative. These contracts all conveniently avoid the fairly standard practice of requiring split check payments from the sawmills where agreed-upon percentages of the payment for logs are made to the landowner and the logger. Instead, Pro Forestry contracts with the sawmills with the requirement that the checks for log purchases by each mill be made out to Pro Forestry.

38.     Third, Pro Forestry uses a kind of shell game to defraud the landowner and at times the contract loggers and roadbuilders. Pro Forestry often embezzles the log proceeds from the rightful recipients by providing incomplete or falsified information regarding the number of loads delivered to a particular mill and the net proceeds owing to the landowner or to contractors. Pro Forestry also regularly directs log truck loads to mills that the landowner or the loggers may not know have received deliveries, thus appropriating 100% of the log sale proceeds to Pro Forestry.

39.     Fourth, when a contractor discovers that Pro Forestry is late on a payment, Pro Forestry often pays only a portion of the outstanding bill and claims the owner is responsible for the balance and tells the contractor to pursue the landowner directly. Pro Forestry uses this method to embezzle additional log sale proceeds.

40.     Fifth, when a landowner raises issues regarding the large difference between log revenues received and what Pro Forestry had projected would be paid or asks for the records to support Pro Forestry's falsified accounting, Pro Forestry provides documentation that is incomplete, confusing and often false, knowing that a landowner with no experience with log trucking, scaling and mill sales information will be unable to figure out what is happening.

41.     Based upon plaintiffs' investigation to date, Pro Forestry used all five components of its longstanding pattern and practice of fraud and deception to bilk three elderly heirs of

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

decedent Edwin A. Yoder as described below. First, there was the unenforceable and illegal contract that Craig Richards insisted be signed by 98 year-old Edwin A. Yoder. Second, Pro Forestry drafted all of the contracts with the four contract loggers who performed timber harvest on the Yoder family property, none of which contained the signature of an actual property owner, but followed the practice of directing all log proceeds to be paid to Pro Forestry.

42.     Third, Pro Forestry embezzled an estimated minimum of $500,000 from plaintiffs by falsely misrepresenting the number of loads delivered and the costs incurred in logging, roadbuilding and other costs.

43.     Fourth, Pro Forestry failed to pay multiple contractors and other costs. In fact, plaintiff Rebecca Ann Yoder Colby was browbeaten by Craig Richards into paying defendant roadbuilder TNT Construction & Excavation LLC the sum of $33,760.38 in October 2023 under threat of the filing of a potential lien, which was an utterly false statement. Pro Forestry also failed to advise plaintiffs of their obligation as landowners to pay timber harvest taxes to the Oregon Department of Revenue. Craig Richards falsely claimed that the State of Oregon had failed to provide notice of the taxes due when in fact it is the obligation of the landowner (and in this case the professional forester) to keep track of the volume harvested and sold to area sawmills and then to fill out the timber tax return and send it with the required tax payment by April 15 of the year following the timber harvest. Pro Forestry missed the April 15 deadline by several months, resulting in penalties and interest of $1612.97, which was ultimately paid personally by plaintiff Rebecca Ann Yoder Colby.

44.     Fifth, when plaintiffs began to raise issues regarding the lack of any revenues being paid to the landowners and the incredible levels of cost represented by Pro Forestry as the reason for no net revenue, the Pro Forestry Defendants followed their standard game plan of

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

providing incomplete and falsified information in formats that no landowner without significant knowledge of how logs are accounted for from the woods to the mill would be able to understand.

45.     The brazenness of the Pro Forestry Defendants' continuing elder abuse of Rebecca Ann Yoder Colby is truly shocking. After more than two years of failing to provide the Yoder family any information about planned timber harvest or the results of harvest operations, distributing no portion of an estimated $1.7 million in revenue and extracting over $35,000 from Rebecca Ann Yoder Colby to pay creditors, Mrs. Colby could no longer endure the emotional stress involved with dealing with the Pro Forestry Defendants and asked for help from her nephew, plaintiff Jonathan A. Miller, and his wife Katherine Miller. The Millers were tenacious in seeking out information from the Pro Forestry Defendants and, when it was not forthcoming, started calling the Logging Contractor and Road Construction Defendants, as well the sawmill purchasers of logs harvested from the Yoder family property and the Oregon Department of Forestry.

46.     These actions obviously got back to the Pro Forestry Defendants and resulted in defendant Craig Richards making repeated calls to plaintiff Rebecca Ann Yoder Colby, which she ignored on the advice of counsel. Craig Richards then resorted to email, sending a long missive on March 11, 2025 in which he deployed what had previously been tried and true tactics. First, he claimed to have undergone surgery in the prior week, just as he had claimed in an email the year before that his wife had nearly "bled out on the table" when she allegedly was in the hospital. Upon information and belief, the medical records for Craig Richards and Patricia Richards will reveal that these representations were in fact despicable lies designed to manipulate a vulnerable elderly person.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

47.     In his March 11, 2025 email, Craig Richards requested that Rebecca Ann Yoder Colby "continue to be our primary contact regarding contractual obligations hereon out," and argued that Pro Forestry's "service agreement was with Your Father as an individual and after his passing would then be you as the trustee." In fact, any obligation of Edwin A. Yoder became that of his Estate, which owned only an undivided two-thirds interest in the property and never authorized any of the Pro Forestry Defendants' fraudulent contracts with the Logging Contractor or Road Construction Defendants in this case or with defendant Northwest Hardwoods, Inc.

48.     In his March 11, 2025 email, Craig Richards complains bitterly about the efforts of Jonathan and Katherine Miller to secure relevant information and characterizes those efforts "as an insult to me and our family business of professionals." He goes on to complain about Katherine Miller's inquiries directed to the Logging Contractor Defendants, stating "I certainly hope she hasn't been talking in a slanderous or defamatory nature? Everything that was done out there was well above board. Given the logging and Road work that was done, the property is now worth a great deal of money."

49.     In fact, nothing could be further from the truth, but the dishonesty of Craig Richards in his March 11, 2025 email apparently knew no bounds. At the end of the email, he makes the following false representation to a vulnerable elderly person: "I don't know the final outcome of the property, but I would still like the 5-10 acres that you told me you would be giving us and would be happy to let you know the location of the particular area." Based upon prior statements made by Craig Richards, this acreage no doubt is on a ridge on the Yoder family property with a commanding view of the Pacific Ocean. On advice of counsel, Rebecca Ann Yoder Colby made no response to this outrageously abusive email from the Pro Forestry Defendants.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

50.     As part of their ongoing investigation, plaintiff Jonathan A. Miller and his wife Katherine Miller advised Craig Richards in early March 2025 that they intended to spend at least a week at the Yoder family property in a trailer beginning on March 17 and needed to know the combination to the lockbox that contained the key to the lock on the gate. Mr. Richards provided the combination to that lockbox, but deliberately put two locks in place, knowing that the key in the combination lockbox would unlock only one of those locks and prevent the Millers from entering the property. Fortunately, Jonathan Miller is a retired auto mechanic who traveled to the property with multiple tools including a metal-cutting saw that he used to cut through a link in the chain used to lock the gate, which enabled the Millers to enter the property and continue their investigation. Rather than allow Mr. Richards or any Pro Forestry personnel to enter the property in the future, the Millers installed new locks before departing the property on March 26. Obviously upset over this development, Mr. Richards continued to harass plaintiff Rebecca Ann Yoder Colby in an email dated March 28, 2025 in which he complained again about the Millers and argued that Pro Forestry's contracts were exclusively with decedent Edwin A. Yoder and Mrs. Colby after his passing.

51.     In his March 28, 2025 email, Craig Richards states that his wife Patricia Richards "is in the process of copying all documents (logging files) and will be mailing them to You (as you are our client)." No such files have been received to date. In his email, Mr. Richards goes on to state that defendant Patricia Richards will be issuing an invoice for over $14,000 in accrued costs which Mr. Richards claims Pro Forestry has been holding onto "for the past 3 years to the end of this project." He then goes on to state that plaintiffs will need to make arrangements to pay all of the contractors who have outstanding billings. And he once again returns to the Pro Forestry Defendants' false claim that he is been promised a 5-10 acre parcel within the Yoder

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

family property, stating: "I'll include a map showing areas that were planted, roads, etc., and the parcel we would like to have in orange (per you telling me multiple times we would be getting a parcel when we were done)."

52.    Late in the evening on March 28, 2025, Craig Richards sent another email to Rebecca Ann Yoder Colby with the map below showing the parcel the Pro Forestry Defendants want transferred to them, which is outlined in orange in the upper left portion of the map.  This proposed parcel is approximately 18 acres, not the 5-10 acres referenced in Mr. Richards' March 11 email, and has the most impressive and commanding view of the Pacific Ocean that exists on the Yoder Family property.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

53.     As set out in paragraphs 1 through 52, the Pro Forestry, Logging Contractor and Road Construction Defendants in this case knew or should have known that the Pro Forestry Defendants were engaged in financial elder abuse of decedent Edwin A. Yoder and his daughter, plaintiff Rebecca Ann Yoder Colby, because these defendants failed to verify the ownership of the Yoder family property and ignored multiple obvious red flags indicating that elder abuse was taking place.

54.     As set out in paragraphs 1 through 52, defendant Northwest Hardwoods knew or should have known that this defendant's log procurement manager for its Eugene, Oregon hardwood sawmill was engaged in financial elder abuse of decedent Edwin A. Yoder and his daughter, plaintiff Rebecca Ann Yoder Colby. Defendant Northwest Hardwoods is imputed with all the knowledge and activities of its employee Craig Richards and therefore is vicariously liable for the elder abuse committed against elderly members of the Yoder family by its management employee Craig Richards.

**B.     Timber Trespass**

55.     At all material times, the Pro Forestry Defendants never had a contractual relationship with any owner of the 321.26 acres of Yoder family forestland at issue in this case. As a result, in connection with the timber harvest, roadbuilding and other activities that the Pro Forestry Defendants participated in, performed or directed be performed by the Logging Contractor and Road Construction Defendants, all of these defendants were at all times trespassers on the Yoder family property.

56.     At all material times, the Logging Contractor and Road Construction Defendants never had a contractual relationship with any owner of the 321.26 acres of Yoder family forestland at issue in this case. As a result, the timber harvest and roadbuilding performed by

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

these defendants, all of which cut down timber on the Yoder family property, constituted timber trespass in violation of Oregon law.

57.     Craig Richards laid out a road system that ignored the opportunity to reduce costs by using pre-existing roads and other rights of access and instead spent over $250,000 building roads primarily in winter months when costs increased dramatically because rock disappears into the mud. The road construction included culvert placement by the roadbuilding defendants that violated Oregon law and resulted in tons of mud flowing into Twomile Creek and ultimately the Coquille River. The Oregon Department of Forestry issued citations for these violations and has advised plaintiffs that a substantial fine will soon be issued.

58.     The photographs below show two improperly installed undersized culverts that delivered tons of salmon egg-smothering sediment to Twomile Creek.

///

///

///

///

///

///

///

///

///

///

///

Page 22 – COMPLAINT





59.     In addition to improper culvert installation, the Roadbuilding Defendants in this case cut roads through steep banks, which these defendants knew would be the subject of significant ongoing slides and sluffing of soil, failed to properly grade and ditch the roads to

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

prevent sediment transport to salmon-bearing streams and constructed roads in rainy winter conditions that dramatically increased the volumes of rock necessary to build the roads.

60.    The logging road design developed by Craig Richards and the roadbuilding contractors was highly inefficient, unnecessarily long and costly and very poorly constructed. At present, many sections of this road system are impassable by passenger car. The photo below is just one example of the impassable character of the road system designed by Craig Richards and built by the Road Construction Defendants.



Page 24 – COMPLAINT

61.     The four Logging Contractor Defendants engaged by Pro Forestry to perform multiple timber harvests over more than two years knew that their companies were devastating the Yoder family's forestland. In fact, Trent Foglio, the owner of logging contractor T&K Foglio, Inc. acknowledged to a Yoder family member in February 2025 that the timber harvest on the Yoder family property was "the worst logging job I've ever seen in 38 years."

62.     This was no overstatement. In over two years of logging operations, the four Logging Contractor Defendants knowingly or negligently harvested the 100-yard wide strips of trees that the Oregon Forest Practices Act requires as a wooded separation buffer between clearcuts with a maximum size of 120 acres. These logging companies also knowingly or negligently invaded the required riparian buffer on both sides of streams and creeks on the Yoder family property, blatantly violating the Oregon Forest Practices Act by harvesting trees within those buffers. These four logging contractors knowingly performed logging operations and log hauling in extremely wet winter conditions when it was obvious that mud was being created that flowed into ditches and culverts that delivered substantial sediment to salmon-bearing streams.

63.     The blatantly illegal harvesting of the 300-foot buffer of trees between large clearcuts and the wholesale invasion of required riparian buffers is revealed by comparing the aerial photograph immediately below with the map on the following page. The aerial photo below shows the entirety of section 16 in Township 27 South,14 West. The western half of this section is the 320 acres of Yoder family forestland. Plaintiffs' 1.26-acre parcel immediately adjacent to the southwest corner of the 320-acre parcel can also be seen as completely clearcut in this aerial photograph, which was taken in late 2023 or early 2024. This aerial photo shows that there may have been compliance at that time with the legal requirement of a 300-foot wooded buffer between clearcuts, as shown by the serpentine forested area running north to south within

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

the 320-acre parcel. In this photo, the required riparian buffer also appears to be intact where Twomile Creek flows through the property entering on the south approximately midway between the property corners and then flowing northwesterly to where this creek exits the property at approximately the midpoint between the north and south corners on the western boundary of the property.



64.     The map below shows how what may have been a 300-foot legally required buffer between large clearcuts in the above aerial photograph has been significantly harvested with a portion of this buffer in the north reduced to 100 feet or less. This map also shows that the riparian buffer on the salmon-bearing Twomile Creek has been substantially invaded. This map does not show how much timber has been removed from this riparian buffer, which can be discerned from the somewhat grainy aerial photograph found on page 5 of this complaint. The actions of the Pro Forestry, Logging Contractor and Road Construction Defendants within the riparian buffer substantially undermined the biological functionality of what remains of this buffer compared to what is required by Oregon Forest Practices Act.

Page 26 – COMPLAINT



65.    As of March 2025, the Yoder family property is a reforestation catastrophe. In Pro

Forestry's illegal contract with Edwin Yoder, Craig Richards' company promised to do the

following:

> Reforestation, including site preparation, logging slash reduction, purchase of seedlings,
> supervision of planting contractors, inspection and records of planted areas to determine
> any needed brush control or inter-planting of existing stands. Inspections of planting,
> stocking surveys, logging slash reduction, and silviculture activities shall be billed at
> hourly rates.

66.    To reforest the approximately 260 acres clearcut by the Logging Contractor

Defendants, 435 seedlings per acre should have been planted for a total of 113,100 seedlings.

Because of the speedy growth of gorse in the area, a highly invasive thorny weed that will kill

young softwood seedlings, it was critically important to spray the gorse with an herbicide before

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

planting and to perform that planting within the first year following harvest. In over two years, Pro Forestry has done no spraying of the rapidly spreading gorse and planted only 17,050 seedlings, using a species mix that was inappropriate to the area. Without herbicide spraying to treat the gorse, the 17,050 seedlings will all die.

67.     In a 2007 47-page biological assessment of Twomile Creek and Bandon State Natural Area in Coos County, less than two miles from the Yoder family property, gorse was identified as the "primary pernicious weed present in the target area" and the report noted that lack of management "has enabled gorse to reach epidemic proportions and serve as a center of dispersal for the species." Any reasonably responsible consulting forester, logging contractor or road builder operating on the Yoder family property would have been aware of the major threat that gorse, which is highly flammable due to its oil content, posed a major threat to the Yoder family property if it was clearcut. It was incredibly irresponsible for the Pro Forestry, Logging Contractor and Road Construction Defendants to pursue a series of clearcuts harvesting timber and building roads, rather than careful selective thinning, knowing that gorse seed, which can fly in the prevailing westerly winds from the epidemic level gorse areas just to the west of the Yoder family property and can live in the soil for 100 years or more, would devastate the Yoder family property unless treated aggressively with herbicides.

68.     Defendants' collective actions clearcut over 80% of the Yoder family property, which each defendant knew or should have known would create an explosive gorse epidemic that will require decades of expensive treatment to eradicate. The extent of that challenge was described as follows in the 2007 biological assessment:

> It will require a large investment in hand cutting or controlled burning, and follow-up treatment with herbicides. Use of heavy equipment for mowing, scarification, or ripping would require regrading many acres for best results. Gorse sprouts readily after burning or cutting, and the large seed bank in the soil causes rapid recovery.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

69.     Taking into account the future for timber production on the Yoder family's 321.26 acres, which should have been top of mind for the Pro Forestry, Logging Contractor and Road Construction Defendants when performing operations on that property, the tragic facts of what actually happened over more than two years demonstrates that these defendants had absolutely no regard for the mess that the Yoder family would be left with. As a result, the future for timber production on the Yoder family's 321.26 acres is both bleak and expensive. Plaintiffs are taking the first step by spraying the gorse in April 2025 and replanting appropriate species in the winter of 2025-26 at an estimated cost of $150,000-$175,000. Unfortunately, however, the costs do not end there because plaintiffs will face an average of $25,000 in annual costs for the next 20 years to control the gorse that poses two major threats to the productive capacity of their forestland. The first is to the ability of the fast-growing gorse to grow above and kill softwood seedlings and the second is the major wildfire risk caused by gorse infestations.

70.     In addition, in the less than 15% of the clearcut acreage that has been planted, Pro Forestry should have coordinated the burning of the large slash or logging debris piles in the areas to be planted. In total, there are more than 500 slash or logging debris piles spread throughout the 260 acres of clearcuts on the Yoder family property. At present, less than 10% of those slash piles littering almost the entire property have been burned, making it impossible to replant the substantial acreage occupied by those large piles.

71.     During the more than two years that the Pro Forestry, Logging Contractor and Road Construction Defendants were performing devastating and poorly implemented timber harvest and roadbuilding operations, Pro Forestry, without any notice to the out-of-state plaintiffs in this case, allowed third parties to regularly enter the property to cut firewood and to remove western red cedar boughs from young cedar trees, sheering off all of the boughs on each tree as

Page 29 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

high as 30 feet off the ground, which severely damaged the growth potential of each tree. Pro

Forestry also conspired with Logging Contractor Defendant Robert Schaffer to allow this

defendant to illegally remove substantial quantities of Port Orford cedar, often referred to as

white cedar, from the Yoder family property without compensation except, upon information and

belief, kickbacks paid to the Pro Forestry Defendants. Logging Contractor Defendant Robert

Schaffer was also allowed to manufacture high-quality portions of Port Orford cedar logs into

bolts that can be sold at good values to the manufacturers of arrows. The photograph below,

upon information and belief, shows an employee of Logging Contractor Defendant Robert

Schaffer splitting three-foot long lengths of these cedar logs into bolts that were then sold to an

arrow manufacturer. These actions were never disclosed to any member of the Yoder family and

the full extent of sale proceeds from this illegally removed material will be determined during

the discovery process in this case.



Page 30 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

72.     During the more than two years that the harvest operations, roadbuilding and other activities by defendants were occurring on the Yoder family property, all of which was known to Craig Richards and that knowledge is imputed to defendant Northwest Hardwoods as its management level employee, there were multiple instances where each defendant knew or should have known that elder abuse, timber trespass and blatantly illegal harvest and roadbuilding operations were occurring. Each and every one of the 10 defendants in this case failed to verify that its work or log purchases were authorized by the Yoder family owners of the property and ignored the many red flags of obviously deficient or outright illegal conduct.

73.     The red flags included communications between the multiple defendant contractors. For example, Trent Foglio of defendant T & K Foglio Inc. asked Craig Richards whether there was "enough timber to justify the expense of the road system?" Mr. Foglio also warned the owner of defendant Grant Creek Logging, Inc. that Craig Richards "was crooked" and he acknowledged to Jonathan and Katherine Miller in February 2025 that "way too much rock went into the roads" on the Yoder family property. During the course of the timber harvesting and roadbuilding on the Yoder family property, all defendants would have observed the building of an inefficient, overly long and expensive road system that lacked any engineering, the harvesting of stands of relatively young timber that, while merchantable, should have been left to grow for another 10 to 20 years to maturity and much higher per tree values and the wasteful and damaging practices depicted in the photos on pages 32 through 37. Despite all of these red flags, no defendant left the project or reported the improper practices and major damages inflicted by defendants' collective operations on the Yoder family property. A number of the red flags referenced above are illustrated by the six photographs below, each of which is provided with an explanatory caption.

Page 31 – COMPLAINT



Sluffing of soil from steeply cut bank on poorly engineered road with no ditch generating considerable silt moving toward creeks.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201



Debris from logging contractor Robert Schaffer associated with changing out an engine on Yoder family property that resulted in spillage of hydraulic oil and diesel fuel.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201



Example of poorly executed timber harvesting that mowed down young timber unnecessarily in order to reach a few large merchantable trees located at the back of the photograph. The western red cedar trees in the left of the photo show removal of cedar boughs to heights of 30 feet or more for sale to florists. These boughs were stolen by third parties known to and authorized by Craig Richards, a fact that was never disclosed to any member of the Yoder family.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201



Example of poorly executed timber harvesting that leaves an isolated island of younger timber that will be blown down in the coming years as a result of substantial westerly winds coming off the Pacific Ocean. This photo also shows a failure to clean up the substantial logging slash or debris.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201



This photograph shows a huge slash or logging debris pile that includes considerable merchantable timber that should have been removed from the property and sold.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201



Photograph of two of the more than 500 logging slash piles that litter the 260 acres of clearcut harvests on the Yoder family property. This photo shows a small portion of where the Yoder family property has a view of the Pacific Ocean. The rapidly spreading gorse infestation can be seen in the foreground of the photo.

74.    The financial results of the massive timber harvest and poorly implemented road construction on the Yoder family property are shocking. Based upon plaintiffs' factual investigation, which was hindered by Pro Forestry's failure to provide plaintiffs with any log sales information for almost all of 2024, Pro Forestry sold approximately two million board feet of logs harvested from the Yoder family property and received approximately $1.7 million in total revenues. Of this total, plaintiffs have received absolutely nothing.

Page 37 – COMPLAINT

75.    After first promising the Yoder family that they would receive "hundreds of thousands of dollars" from the timber harvest on their property, inquiries of Mr. Richards about distributions by Edwin Yoder's daughter and caregiver Rebecca Ann Yoder Colby were met with sob stories about excess costs and new promises of significant revenues in the future.

76.    As alleged above, the actions of the Pro Forestry, Logging Contractor and Road Construction Defendants, were all performed as illegal trespassers, resulting in estimated damages of $4.8 million. Substantial discovery including documents, emails and text messages, depositions of all personnel involved in the logging and roadbuilding on the Yoder family property is necessary to quantify with precision the Yoder family plaintiffs' timber trespass damages, which will be specifically proven at trial.

77.    Pursuant to ORS 105.810 (1), because the massive timber trespass inflicted on the Yoder family plaintiffs by the Pro Forestry, Logging Contractor and Road Construction Defendants was willful, intentional and without the consent of any owner of the Yoder family property, the Yoder family plaintiffs are entitled to trebling of their economic damages, bringing the total to $4.8 million. These plaintiffs are also entitled to prejudgment interest and to an award of their reasonable attorney's fees and investigation costs in prosecuting this action.

78.    Under Oregon law, pursuant to ORS 105.810 (4), a contract logger who commits timber trespass is liable only for single actual damages provided the contract logger secures a signed contract with the legal owner of the property that contains a "metes and bounds description or other sufficient legal description" of the property and, before beginning any harvesting, the logging contractor verifies proof of ownership. None of the four Logging Contractor Defendants in this case performed this basic due diligence, which is a well-known and essential best practice in the logging industry.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

79.    In fact, based upon plaintiffs' prefiling investigation, it appears that the contracts used by Pro Forestry to engage all four Logging Contractor Defendants are substantially identical. Upon information and belief, each of these contracts was prepared by the Pro Forestry Defendants, fails to meet the clear standards that would provide a logging contractor with protection against timber trespass liability for treble damages and is a long-standing tool used by the Pro Forestry Defendants to facilitate their fleecing and defrauding of woodland owners who know little or nothing about timber harvest operations or the economics of those operations.

80.    Based upon the facts of this case, the Pro Forestry, Logging Contractor, Road Construction and Northwest Hardwoods Defendants are all liable as trespassers for the Yoder family plaintiffs' timber trespass damages and their legal and investigative fees.  Substantial investigation field work and discovery will be necessary to determine the percentage of fault on the part of the Pro Forest Defendants and each of the Logging Contractor and Road Construction Defendants, which will be specifically proven at trial.

**C.    <u>Negligence.</u>**

81.    The allegations set forth in paragraphs 1 through 80 describe multiple instances of grossly negligent, reckless and negligent conduct on the part of defendants, which resulted in the massive damages to the Yoder family property described in detail above.

**D.    <u>Fraud.</u>**

82.    The allegations set forth in paragraphs 1 through 80 establish intentional fraud on the part of the Pro Forestry Defendants, Defendant Northwest Hardwoods and Defendant Robert Schaffer, which resulted in damages which are presently estimated to total $4.8 million, but which will be specifically proven at trial.

///

Page 39 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

E.    **Nuisance**

83.    The allegations set forth in paragraph 1 through 80 establish that defendants'
collective actions imposed a private nuisance on the Yoder family property, which resulted in
damages which are presently estimated to total $4.8 million, but which will be specifically
proven at trial

V.    **FIRST CLAIM FOR RELIEF: FINANCIAL ELDER ABUSE**

**(Against Pro Forestry Defendants - ORS 124.110(1)(a))**

84.    Plaintiffs reallege paragraphs 1 through 83.

85.    As set forth above, the Pro Forestry Defendants committed financial elder abuse
against the now deceased Edwin A. Yoder, the Estate of Edwin A. Yoder and Rebecca Ann
Yoder Colby in her individual, personal representative and trustee capacities (collectively
referred to as "Yoder family elder abuse plaintiffs") by wrongfully appropriating money and
property belonging to the Yoder family elder abuse plaintiffs in violation of Oregon law.

86.    As a result of Pro Forestry Defendants' financial elder abuse, the Yoder family
elder abuse plaintiffs have suffered significant financial and property losses in an amount to be
specifically proven at trial but currently estimated at $4.8 million, and Rebecca Ann Yoder
Colby suffered $500,000 in mental distress, pain and suffering.

87.    Pursuant to ORS 124.100(2), the Yoder family elder abuse plaintiffs are entitled
to trebling of their estimated $5.3 million in economic and non-economic damages, which totals
$15.9 million. These plaintiffs are also entitled to prejudgment interest from February 28, 2025
and to an award of their reasonable attorney's fees incurred in prosecuting this action.

88.    Pursuant to ORS 124.120, the Yoder family elder abuse plaintiffs seek
preliminary and permanent injunctive relief prohibiting Pro Forestry Defendants from making

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

contact with plaintiff Rebecca Ann Yoder Colby or entering the Yoder family property and requiring them to cease all consulting forestry business operations in Oregon including any solicitation of business from any person age 65 or older.

## VI.     SECOND CLAIM FOR RELIEF: FINANCIAL ELDER ABUSE

### (Against Northwest Hardwoods - ORS 124.110(1)(a))

89.     Plaintiffs reallege paragraphs 1 through 83.

90.     Defendant Craig Roberts committed financial elder abuse against the Yoder family elder abuse plaintiffs by wrongfully appropriating money and property belonging to the Yoder family elder abuse plaintiffs in violation of Oregon law.

91.     Upon information and belief, Mr. Richards was acting in the course and scope of his employment with Northwest Hardwoods and was motivated, at least in part, to serve his employer's interests for some or all of his actions in committing that financial elder abuse, making defendant Northwest Hardwoods liable for the financial elder abuse under principles of *respondeat superior* or vicarious liability.

92.     As a result of defendants' elder abuse, the Yoder family elder abuse plaintiffs have suffered significant financial and property losses in an amount to be specifically proven at trial but currently estimated at $4.8 million, and plaintiff Rebecca Ann Yoder Colby suffered $500,000 in mental distress, pain and suffering.

93.     Pursuant to ORS 124.100(2), the Yoder family elder abuse plaintiffs are entitled to trebling of their estimated $5.3 million in economic and non-economic damages, which totals $15.9 million. These plaintiffs are also entitled to prejudgment interest from February 28, 2025 and to an award of their reasonable attorney's fees incurred in prosecuting this action.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

## VIII.   THIRD CLAIM FOR RELIEF: FINANCIAL ELDER ABUSE

### (Against Logging Contractor Defendants, Road Construction Defendants, and Northwest Hardwoods - ORS 124.110(1)(b))

94.     Plaintiffs reallege paragraphs 1 through 83.

95.     As set forth above, defendant the Pro Forestry Defendants committed financial elder abuse against the Yoder family elder abuse plaintiffs by wrongfully appropriating money and property belonging to Yoder family elder abuse plaintiffs in violation of Oregon law.

96.     The Logging Contractor and Road Construction Defendants and Northwest Hardwoods all knowingly undertook their respective activities in connection with the Pro Forestry Defendants' logging operations alleged above.

97.     The Logging Contractor Defendants, Road Construction Defendants and Northwest Hardwoods all permitted the financial elder abuse of the Yoder family elder abuse plaintiffs by taking actions in connection with the Pro Forestry Defendants' logging and road building operations in circumstances under which they knew or a reasonable person should have known would result in the abuse set forth above.

98.     As a result of defendants' elder abuse, the Yoder family elder abuse plaintiffs have suffered significant financial and property losses in an amount to be specifically proven at trial but currently estimated at $4.8 million, and plaintiff Rebecca Ann Yoder Colby suffered $500,000 in mental distress, pain and suffering.

99.     Pursuant to ORS 124.100(2), the Yoder family elder abuse plaintiffs are entitled to trebling of their estimated $5.3 million in economic and non-economic damages, which totals $15.9 million. These plaintiffs are also entitled to prejudgment interest from February 28, 2025 and to an award of their reasonable attorney's fees incurred in prosecuting this action.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

## VII.   FOURTH CLAIM FOR RELIEF: TIMBER TRESPASS

### (Against Pro Forestry, Logging Contractor and Road Construction Defendants)

100.   Plaintiffs reallege paragraphs 1 through 83

101.   As alleged above, the devastating timber trespasses resulting from the timber harvest and road construction operations of the Pro Forestry, Logging Contractor and Road Construction Defendants resulted in substantial damages to the plaintiff Yoder family members in the categories of damage to Plaintiff's 321.26 acres of forestland, lost growth for three years due to delayed reforestation, loss of timber value due to premature harvest of the majority of the timber on plaintiffs' property that had not yet reached full maturity and the costs of rehabilitation of impassable roads and reforestation. All total, plaintiffs' damages are estimated to be $4.8 million, which will be proven with specificity at trial.

102.   Because the entirety of the trespass on plaintiffs' property by the Pro Forestry, Logging Contractor and Road Construction Defendants was willful and intentional, plaintiffs are entitled to a trebling of their $4.8 million in damages to $14.4 million. Further, plaintiffs are entitled to prejudgment interest on all damages from February 28, 2025 and to an award of their reasonable attorneys' fees and investigative costs.

## VIII.   FIFTH CLAIM FOR RELIEF: NEGLIGENCE

### (Against All Defendants)

103.   Plaintiffs reallege paragraphs 1 through 83.

104.   As a professional forestry firm that was supposed to advise the owners of the Yoder family property how best to conduct a limited harvest, the Pro Forestry Defendants had duties, consistent with the standards of care governing professional foresters, to recommend only sustainable and legal timber harvests and roadbuilding operations, to clearly communicate the

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

proposed risks and limitations of proposed timber harvest plans, to disclose any conflicts of interest that could influence professional judgment, and to provide accurate and complete information and financial accounting of log sales revenues and operational costs.

105.    These standards of care are codified in California as a code of ethics in that state's Professional Forester Law. These ethical standards are applicable to professional foresters throughout the United States because the community of U.S. forestry professionals, including those practicing professional forestry in Oregon, recognize the same core ethical obligations through the codes of ethics adopted by the Society of American Foresters and the Association of Consulting Foresters. An Oregon professional forester's failure to carefully observe these standards of care constitutes professional malpractice.

106.    The Pro Forestry Defendants in this case, who purported to be a professional forestry firm headed by professional forester Craig Richards, engaged in willful and intentional gross negligence and professional malpractice in the following particulars:

1. Failing to develop recommended harvest plans and road construction designs that addressed potential risks;

2. Failing to disclose any harvest or road construction plans to the owners of the Yoder family property;

3. Filing six notifications of timber harvest or road construction activities with the Oregon Department of Forestry that were never discussed with or disclosed to the owners of the Yoder family property;

4. Implementing timber harvest operations and road construction in blatant violation of Oregon's Forest Practices Act, specifically failing to maintain a 300-foot fully wooded buffer between large clearcuts, allowing illegal incursions of timber harvest into legally required riparian buffer zones adjacent to salmon-bearing creeks or streams, authorizing operations by the Logging Contractor and Road Construction Defendants that unlawfully delivered tons of mud and other sediment to salmon-bearing streams or creeks on the property, killing the eggs of endangered salmon and steelhead.

Page 44 – COMPLAINT

107.    The Logging Contractor and Road Construction Defendants knowingly or negligently implemented the illegal or poor logging and road construction practices described in the preceding paragraph.

108.    As a proximate result of the actions of the Pro Forestry, Logging Contractor and Road Construction Defendants alleged above, the Yoder family plaintiffs suffered an estimated $4.8 million in damages, which will be specifically proven at trial. Plaintiffs are also entitled to prejudgment interest from February 28, 2025.

### IX.    <u>SIXTH CLAIM FOR RELIEF: FRAUD</u>

### (Against Pro Forestry Defendants)

109.    Plaintiffs reallege paragraphs 1 through 83.

110.    As set forth above, the Pro Forestry Defendants committed fraud against the now deceased Edwin A. Yoder, the Estate of Edwin A. Yoder and Rebecca Ann Yoder Colby in her individual, personal representative and trustee capacities (collectively the "Yoder family fraud plaintiffs") by making false material representations that they would conduct a professionally responsible harvest of the timber on the Yoder Property that would net the Yoder family fraud plaintiffs hundreds of thousands of dollars.

111.    Instead, as set forth above, the Pro Forestry Defendants devastated the Yoder property, leaving plaintiffs with significant restoration and reforestation costs, and they paid plaintiffs nothing despite selling approximately $1.7 million in timber fraudulently taken from the Yoder property.

112.    The Pro Forestry Defendants knew their representations were false and intended the Yoder family fraud plaintiffs to rely on them.  The Yoder family fraud plaintiffs were unaware of the falsity of those representations and justifiably relied on them.

Page 45 – COMPLAINT

113.     As a result of the Pro Forestry Defendants' fraud, the Yoder family fraud plaintiffs have suffered significant financial and property losses in an amount to be specifically proven at trial but currently estimated at $4.8 million, and Rebecca Ann Yoder Colby suffered $500,000 in mental distress, pain and suffering.

## X.     SEVENTH CLAIM FOR RELIEF: PRIVATE NUISANCE

### (Against Pro Forestry, Logging Contractor and Road Construction Defendants)

114.     Plaintiffs reallege paragraphs 1 through 83.

115.     As set forth above, the Pro Forestry, Logging Contractor and Road Construction Defendants substantially and unjustifiably interfered with the plaintiffs' use and enjoyment of their property.

116.     As set forth above, Defendants' interference with the plaintiffs' use and enjoyment of their property was culpable because it was reckless, negligent, and done in violation of the Oregon Forest Practices Act.

117.     As a result of the nuisance created by Defendants, the plaintiffs have suffered significant financial and property losses in an amount to be specifically proven at trial but currently estimated at $4.8 million.

## XI.     EIGHTH CLAIM FOR RELIEF: PRIVATE NUISANCE

### (Against Northwest Hardwoods)

118.     Plaintiffs reallege paragraphs 1 through 83.

119.     As set forth above, defendant Craig Richards created a private nuisance.

120.     Defendant Craig Richards was acting in the course and scope of his employment with Northwest Hardwoods and was motivated, at least in part, to serve his employer's interests

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

for some or all of his actions in creating that nuisance, making defendant Northwest Hardwoods

vicariously liable for it.

121.     As a result of the nuisance created by Defendants, the plaintiffs have suffered

significant financial and property losses in an amount to be specifically proven at trial but

currently estimated at $4.8 million.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court award the following relief:

1.     For preliminary and permanent injunctions prohibiting all defendants from having any contact with plaintiff Rebecca Yoder Colby or entering the Yoder family property and requiring the Pro Forestry Defendants to cease all professional forestry business operations in Oregon including any solicitation of business from any person age 65 or older;

2.     On their First , Second, and Third Claims for Relief, for an award of single damages against all defendants in the amount of $5.3 million, which will be specifically proven at  trial, which this Court should treble to $15.9 million;

3.     On their Fourth Claim for Relief, for an award of single damages against all defendants in the amount of $4.8 million, which will be specifically proven at trial, which this Court should treble to $14.4 million;

4.     On their Fifth Claim for Relief, for an award of damages against all defendants in the amount of $4.8 million, which will be specifically proven at trial;

5.     On their Sixth Claim for Relief, for an award of damages against all defendants in the amount of $5.3 million, which will be specifically proven at trial;

6.     On their Seventh and Eighth Claims for Relief, for an award of damages against all defendants in the amount of $4.8 million, which will be specifically proven at trial;

7.     For an award of prejudgment interest on all actual damages awarded;

8.      For an award of plaintiffs' reasonable attorney's fees, investigative and other costs incurred in prosecuting this case; and

9.     Granting such other and further relief as the Court deems just and equitable.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues triable of right by a jury.


DATED this 31st day of March, 2025.

HAGLUND KELLEY LLP

By: *s/ Michael E. Haglund*
      Michael E. Haglund, OSB No. 772030
      Matthew E. Malmsheimer, OSB No. 033847

      Attorneys for Plaintiff

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201